## Case No. 14,623.

### UNITED STATES v. BOLTON et al.

[Hoff. Op. 44; Hoff. Dec. 93.]

District Court, D. California.   Aug. 17, 1858.[1]

SPANISH LAND GRANT—DETERMINATION OF VALIDITY—METHOD OF PROCEDURE—BILL OF REVIEW.

[The acts of 1851, 1852, and 1855, authorizing the district court to review the action of the board of commissioners instituted to try and determine the validity of claims based on titles derived from the Mexican or Spanish government, conferred an entirely new jurisdiction; and the rules of equity allowing the filing of a bill of review are not applicable in such proceedings.]

[This was a motion for leave to file a bill of review by the United States in the case of the claim of James R. Bolton. The claim had been confirmed. Case unreported.]

HOFFMAN, District Judge. This is a motion for leave to file a bill of review. No motion for a rehearing was made during the term at which the original decree was rendered, and a petition for leave to file a bill of review is now presented in accordance with the rules of courts of chancery. The questions to be determined are of great importance, not only from the magnitude of the interest involved in this case, but because the decision of the court will, in effect, determine whether all the decrees made by this court on appeals from the board of land commissioners, and not passed upon by the supreme court, are, and for five years from the date of the decree will continue to be, liable to revision and reversal.

The first question to be determined is, has this court jurisdiction to entertain a bill of review in this class of cases? It is urged on the part of the United States that these cases are essentially suits in chancery, that the court in its decision is required to be governed by the principles of equity, and that, as the power to entertain a bill of review, to revise its own decrees, is admitted to be within the jurisdiction of a court of chancery, this court must have the like authority. That these cases, or such of them, at least, as are founded on inchoate or equitable titles, bear much analogy to suits in equity, may be admitted. But neither the general rules of chancery practice, nor those prescribed by the supreme court for suits in equity, furnish the guides by which they are to be conducted. The jurisdiction of this court over them is

---

[1] [Reversed in 23 How. (64 U. S.) 341.]

solely derived from the act of 1851 [9 Stat. 631] and that of 1852 [10 Stat. 76]. By the act of 1851 a board of commissioners was instituted to try and determine the validity of claims to lands in California, by virtue of any right or title derived from the Mexican or Spanish government. Their decisions, with the reasons on which they were founded, were to be certified to the district court within 30 days after the same were rendered. To entitle either the claimant or the United States to a review of the proceedings and decision of the commissioners, a notice of the intention of the party to file a petition in the district court for the purpose was required to be entered on the journals or record of the commissioners within 60 days after the making of their decision, and the petition was to be filed in the district court within six months after the decision of the board was rendered. By the ninth section special provision was made as to what the petition is to presented to the district court should set forth,—that it should contain, if presented by the claimant, a transcript of the report of the board, and of the documentary and other evidence on which it was founded; and if presented on behalf of the United States, that it should be accompanied by a like transcript, and should set forth the grounds on which the claim was alleged to be invalid, and a copy of the petition was to be served on the opposite side. Further provisions were made as to what should be set forth in the answers to the petitions. By the tenth section it is made the duty of the district court to proceed and render judgment upon the pleadings and evidence in the case, and upon such further evidence as might be taken by order of the court; and on application of the party against whom judgment should be rendered, to grant an appeal to the supreme court, etc. And by the thirteenth section, for all claims finally confirmed by the commissioners, or the district or supreme courts, patents were to issue. The mode above described for removing the case from the board of commissioners to the district court was subsequently changed by the twelfth section of the act of 1852, and provisions of a still more exceptional and special character were made. By that section the mere filing of the transcript of the proceedings of the board was, ipso facto, to operate as an appeal to this court, which, however, was to be regarded as dismissed unless the party against whom the decision had been rendered gave notice, within six months, of his intention to prosecute it. Finally, by the act of 1855 [10 Stat. 631], the district court for the trial of these cases was organized in a special manner, and it was provided that "the circuit judge, when in his opinion the business of his own court should permit, or that of the district courts require," should form part of and preside over the district court when engaged in the discharge of their appellate jurisdiction in land cases.

It is apparent, from the foregoing summary of the statutory provisions as to these cases, that the jurisdiction conferred on the court is new, and to be exercised in a special manner, prescribed by law. It is special and extraordinary as to the subject-matter, for it embraces only claims to lands within a state, derived from a particular source—the Spanish or Mexican government; as to the parties, for in these proceedings the United States consents to be sued, and to have its rights determined; as to the mode of proceeding, for the claim is in the first instance to be presented to a tribunal, not a court of justice, and the mere filing of a transcript of their proceedings is the initiation of a suit in this court, to be tried upon the evidence taken before the board, and such other testimony as may be taken by order of this court; and, finally, as to the organization of the court, for it is composed, in these cases alone, of the circuit as well as the district judge. If these provisions are not to be regarded as conferring a new, extraordinary, and special jurisdiction, I confess myself unable to imagine what statutory enactments would have that effect. That they were so considered by congress is apparent from the language of the act of 1855, which provides that thereafter the district courts of California shall exercise only the ordinary duties and powers of the district courts of the United States, "except the special" jurisdiction vested in said district courts over the decisions of the board of commissioners. If, then, the jurisdiction conferred on this court be a new jurisdiction, to be exercised in a special manner, prescribed by law, are not the powers of the court and the remedies it can afford, limited by the provisions of the act conferring the jurisdiction? Or can the court exercise jurisdiction in a new proceeding not expressly allowed by the acts of congress, though admissible if the original cause had been decided by a court of chancery in the exercise of its ordinary jurisdiction? Upon the determination of this point the decision of the case must depend.

A somewhat similar case is reported in Cro. Car. 40. Upon a decree made by commissioners under St. 43 Eliz. c. 4, a re-examination was sought upon a bill of review, as other bills of review upon decrees in chancery; but it was resolved "that this bill of review is not allowable, but the decree in chancery is conclusive and not to be further examined, because it takes its authority by the act of parliament, and the act doth mention but one examination; and it is not to be resembled to the case where a decree is made by the chancellor under his ordinary authority, and Jones said so it was upon a decree made upon the statute." 37 Hen. VIII. The supreme court of the United States have established substantially the same principle. By the act of May 15, 1820 [3 Stat. 592], the agent of the treasury was authorized to issue a warrant of distress against certain officers failing to pay over public moneys. The fourth

section provided that any person aggrieved might prefer a bill of complaint to any district judge, and the judge was empowered to grant an injunction to stay proceedings on the warrant. A right of appeal from the decision of the judge refusing to grant or perpetuate the injunction was given to the party aggrieved by such decision, upon the allowance of a judge of the supreme court. Under these provisions a warrant was issued against Nourse, who applied for an injunction; and after a reference and other proceedings, the injunction was made perpetual. The United States appealed to the circuit and supreme courts. But the court decided that, no right of appeal having been given to the United States by the act, no such right existed by virtue of the general laws allowing and regulating appeals in ordinary cases, and the court says: "It may be admitted that an enlargement of the powers of the district court, by giving a new remedy, would not require a special provision to secure the right of appeal; but if a new jurisdiction be conferred, and a special mode be provided by which it shall be exercised, it is clear that the remedy cannot be extended beyond the provisions of the act." U. S. v. Nourse, 6 Pet. [31 U. S.] 494. The force of this decision is felt by the counsel of the government. It is attempted to be met by the suggestion that, in that case, the jurisdiction was conferred upon the judge and not upon the court. But, in the first place, it is to be observed that the decision of the supreme court in no respect proceeds upon such a distinction, and the extract above quoted unmistakably affirms the general principle enunciated, with reference to a new jurisdiction conferred upon a court as distinguished from a mere enlargement of the powers of the same court by giving a new remedy. That the jurisdiction conferred upon this court over land cases is new, extraordinary, and exceptional, and that a special mode of exercising it has been provided, has already been abundantly shown.

In the second place, it was expressly decided in Porter v. U. S. [Case No. 11,290], that the act of congress prescribing a mode of relief against a treasury warrant of distress confers a power on the court, and not upon the judge as an individual. And in U. S. v. Cox, 11 Pet. [36 U. S.] 165, the supreme court says that the jurisdiction given to the judge may be exercised by him while holding court or at any other time. In U. S. v. Nourse, 9 Pet. [34 U. S.] 8, it was decided by the supreme court, Chief Justice Marshall delivering the opinion, that the judgment in Nourse's favor in the proceedings under the treasury warrant of distress was a conclusive bar to a subsequent suit by the United States for the same demand, and this on the general principle "that the judgment of a court of competent jurisdiction, while unreversed, concludes the subject-matter, as between the same parties. They cannot bring it again into litigation." It appears, therefore, that the

suggestion that the principle established in [U. S. v. Nourse] 6 Pet. [31 U. S.] 470 refers only to a jurisdiction conferred upon a judge as an individual cannot be supported. But the report of the Case of Nourse furnishes a still more decisive authority. A note to that case contains a report of the case of U. S. v. Bullock, 6 Pet. [31 U. S.] 486, in the district court of Georgia. A treasury warrant of distress had issued against Bullock, who filed his bill for an injunction. On the hearing of that case, a certain amount was adjudged to be due to the United States, which was paid by the defendant. The United States subsequently filed their petition for leave to file a bill of review, alleging that new and other evidence had been discovered since the hearing, which it was not in their power to produce at that time. This application was refused because, as stated in the statement of the case, "the act of May 15, 1820, did not vest in the district court general and unlimited equity powers, but merely gave a special authority, which, having been executed, could not be reviewed by that court." The principle affirmed in the Case of Nourse is impliedly recognized by the supreme court in Ex parte Christy, 4 How. [45 U. S.] 317. The question before the court related to the jurisdiction of the district court in cases of bankruptcy; and it was objected that its summary jurisdiction ought not to be extended to the case before the court, as it was without appeal to any higher court. "This," say the court, "we readily admit. But this was a matter for the consideration of congress, in framing the act." And it seems, on all sides, to have been considered that, as the act conferring the special jurisdiction gave no right of appeal, none such existed.

But the question raised in the case at the bar, in the case of Sampeyreac v. U. S., 8 Pet. [33 U. S.] 222, was distinctly presented to the supreme court. In that case, a title to land had been confirmed to one Sampeyreac by the superior court of Arkansas, under the act of 1824 [4 Stat. 52]. A bill of review was subsequently filed by the United States, under the provisions of the act of 1830 [4 Stat. 399], authorizing a bill of review to be filed by the United States in cases where the warrant concession, or other evidence of title, was alleged to be a forgery; and empowering the court to revise and annul any prior decree or adjudication on such claim, and declaring that thereupon, such prior decree or adjudication should be deemed and held null and void, etc. The grant, at the argument, was admitted to be a forgery; but it was contended (1) that, under the act of 1824, the court had no authority to entertain a bill of review; and (2) that the act of 1830 giving such authority, was unconstitutional, the rights of an innocent person having become vested. The court say: "We think it unnecessary to go into an examination of the questions made under the first point. Although the act of 1824 directs that every peti-

tion presented under its provisions shall be conducted according to the rules of a court of equity, it may admit of doubt whether all the powers of a court of equity in relation to bills of review are vested in that court," etc. The case was determined on the second point. The act of 1824, referred to by the court, unequivocally provided, not merely that cases under it should be determined according to the principles of equity, but that they should be conducted according to the rules and practice of courts of equity; and the court was authorized to direct disputed facts to be found by a jury, "according to the regulations and practice of the court when directing issues in chancery before the same court." Act May 26, 1824, § 2. Even under these provisions, the supreme court doubted, as has been seen, whether all the powers of a court of chancery in relation to bills of review were vested in the court. But the act of 1851 contains no similar provisions. It has never been supposed that the general rules of equity practice are the rules of proceeding of this court in these cases, nor has it been suggested that the court possesses the ordinary powers of a court of chancery to direct issues of fact to be tried by a jury.

The jurisdiction to entertain bills of review must, if at all, be possessed by this court, either by virtue of an express authority conferred by the statute, or by virtue of its general equity powers conferred upon it by law, and which, though not expressly authorized in this class of cases, may, nevertheless, be exercised with regard to them. It is admitted that the act confers no express authority to entertain bills of review, and this court, since the act of 1855, establishing a circuit court, possesses no special chancery jurisdiction whatever; but it is urged by the district attorney that, at the date of the passage of the act of 1851, this court did possess the full equity jurisdiction of the circuit court, and that congress, in committing this class of cases to the jurisdiction of the court, intended that it should exercise with regard to them, the general equitable jurisdiction conferred upon it in ordinary cases. The argument is ingenious, but cannot, I think, be maintained; for—First, it admits that, unless the court had possessed, in 1851, general jurisdiction as a court of chancery, or if it had originally been constituted as it now is, a bill of review could not be entertained. The power to entertain such a bill is thus derived, not from the statute conferring the new jurisdiction in these cases, but from the fact that the jurisdiction was conferred upon a court exercising the powers of a court of chancery. But the decision above cited of the supreme court is clear that when a new jurisdiction is conferred, and a special mode for its exercise provided, the remedies cannot be extended beyond the provisions of the act by virtue of any general laws regulating the ordinary jurisdiction of the court. Had the

supreme court thought otherwise, appeals from the district court sitting in bankruptcy, or under the provisions of the act of May 15, 1820, would have been allowed, if authorized by general laws regulating appeals. Second. The general chancery jurisdiction formerly possessed by this court it no longer retains. If, then, the power to entertain bills of review in land cases was derived from the laws giving to the court the ordinary jurisdiction · of a court of equity, it would seem that the power contended for cannot survive, in this court, the loss of the jurisdiction to which it owed its existence. Thirdly. In the case of Sampeyreac v. U. S., 8 Pet. [33 U. S.] 222, the doubt expressed by the supreme court was whether or not the statute conferring the new jurisdiction vested in the superior court all the powers of a court of chancery in relation to bills of review; the provisions of that statute being, as we have seen, susceptible of being construed to confer general equity powers upon the court with reference to land cases. And the court, by the expression of a doubt as to the construction of a statute, negative the idea that the jurisdiction contended for was to be sought in any other general laws regulating the ordinary jurisdiction of the Arkansas court. In the case of U. S. v. Cox, 11 Pet. [36 U. S.] 162, a similar argument was made by the attorney general, but overruled by the supreme court. A treasury warrant of distress had issued against Cox, who applied to the district judge for an injunction, which, on a final hearing, was made perpetual. The United States appealed, and the attorney general attempted to distinguish the case from that of U. S. v. Nourse, by the fact that the district court which granted the injunction possessed circuit court jurisdiction. The case was therefore, he contended, a case of chancery jurisdiction. Appeals in chancery cases were authorized by the laws establishing the court. But the supreme court refused to recognize the distinction, and decided, as in Nourse's Case, that, as no appeal was given to the government by the statute conferring the new jurisdiction, the decree of the district judge must be held final. If the consequences of exercising the jurisdiction contended for be considered, additional arguments against its existence will be furnished.

It is admitted, or rather contended, by the counsel of the government, that a bill of review must (on a proper showing) be entertained by this court, in these cases, at any time within five years from the time of rendering the decree, unless a decision on appeal has in the meantime been had in the supreme court. The bill may, of course, be filed by the claimants, as well as by the United States. It needs no argument to show that it was the policy, the duty, and the intention of congress to secure the speedy settlement of land titles in this state. The pernicious effect of the prevailing uncertain-

ty of titles is universally recognized. But if every case, whether decided in favor of the United States or of the claimants, is liable to be reviewed, and reversed at any time within five years from the rendering of the decree, unless finally decided on appeal, and even then, if permission be given by the supreme court, the policy of the act of congress so strongly enforced by the condition of the country would be wholly defeated. No confirmation or rejection of a claim to land heretofore made by this court could in such case be deemed "final," and the majority of land titles in this state would, for at least four or five years, be involved in the same uncertainty from which it has hitherto been supposed they were at last emerging. But suppose, before the bill of review is filed, that a patent has issued to the claimant, or, if the decision was in favor of the United States, that the land has been surveyed and settled upon as public land; are the rights of the patentee, or of innocent purchasers under him, or are the rights of pre-emptioners under our general laws, to be divested by a decree of the court, reversing, after the lapse of four or five years, its former decree? The operation of the act of 1830, which allowed bills of review to be filed before the supreme court of Arkansas, was limited to a period less than 14 months from the date of its passage, and only embraced cases where the title was alleged to have been forged. It was also provided, by that act, that no entries of land should be made in Arkansas under the provisions of the act of 1824, until the further directions of congress, and that no patents should issue in any case unless the commissioner of the land office should be satisfied of the genuineness of the original title, or unless it had been determined, on the hearing of the bill of review, to be genuine. The fifth section provided that, in case the court should, on the hearing of the bill of review, annul its prior decree, all lands entered under such prior decree should be subject to sale or entry, as other public lands of the United States.

If this court is to take jurisdiction of bills of review, a limitation of its power to entertain them to some period less than five years, as well as legislation similar to that above cited, to give effect to and define the operation of its decrees of reversal, is obviously necessary to escape embarrassments and injustice more serious than those which the bill of review is filed to prevent. Again: The filing of a bill of review is the commencement of a new suit to be prosecuted according to the rules of equity practice. The defendant must of course be subpoenaed to appear. But how, in case the bill is filed by a claimant against the United States, can the latter be compelled to appear? The government has consented to be sued, but in the particular mode specially pointed out, viz. by the filing of a petition and claim before the board of commissioners. The United States have not consented to become parties defendant to a suit in chancery brought in this court. Again: It will not be denied that a court of chancery has power to entertain a bill filed to obtain a review of a decree reversing a former decree. Will it be contended that this court could entertain such a bill, and compel by subpoena the United States to appear to it? And yet, if it has, in these cases, the general equity powers attributed to it, it must possess as much authority to entertain such a bill as it had to entertain an ordinary bill of review. The bill of review may, of course, be answered or demurred to, and a formal decree must be made in the suit. To what court is an appeal from that decree to be taken? To the circuit or supreme court? The act provides for an appeal from the decree in the original suit, but is silent as to appeals from a decree on a bill of review. The act of 1830, already cited, expressly provided (section 7) for an appeal to the supreme court from all judgments or decrees of the court of Arkansas on the bills of review which it authorized to be brought. Congress thus seems to have considered such a provision to be necessary to give a right of appeal from decrees on bills of review, notwithstanding that the act of 1824, like that of 1851, gave an appeal to either party from the final decree in the original suit. In whatever light the question of jurisdiction be regarded, whether on principle or authority, or with reference to the consequences which would follow any attempt to exercise it, the objections are insurmountable. I am clear that the court does not possess it.

Having arrived at the conclusion that this court has no jurisdiction to entertain a bill of review in any case, a particular examination of the merits of this application is unnecessary. Some observations, however, with respect to them, may not be inappropriate. The bill of review is sought, in this case, to be filed on the ground of newly-discovered evidence. It has uniformly been held that the evidence sought to be given should be such as, if unanswered, will procure the reversal of former decree, or at least present a case of so much nicety and difficulty as to be a fit subject for judicial determination. In the language of the supreme court, it should be "of a decided and controlling character." [Southard v. Russell] 16 How. [57 U. S.] 569. The application in this case rests substantially on the affidavit or an information derived from one Alfred A. Green. This witness swears that Santillan, the alleged grantee of the original grant, admitted and confessed to him that the same was fraudulent and forged, and that he is ready to testify to that effect. He also states that Santillan made a declaration of these facts before the United States consul, which the former district attorney states he has seen. Mr.

Green further swears that there is now within reach of the process of this court a witness who will prove the same facts. No affidavit on the part of Santillan is produced, nor is even the alleged declaration before the consul exhibited. No affidavit by the other witness is offered, nor is even his name given. The truth of the facts sought to be proved is thus unsworn to by any witness whatever, and the court must rely upon the statement of Mr. Green that Santillan has confessed them and will swear to them, and that another anonymous witness is ready to do the like. It would seem that, in applications of this kind, the court has a right to expect that the existence of the facts sought to be given in evidence should be shown by the oath of at least one witness. If, however, the new evidence proposed is not that of Santillan himself, but of Mr. Green that Santillan has recently made a parol confession to him, its admissibility may be doubtful. On the part of the claimants an affidavit has been presented, from which it appears that Santillan, on the 11th of March, 1857, appointed Mr. Alfred A. Green his attorney in fact, and that, since his return from Mazatlan with the alleged declaration of Santillan, that the claim was a fraud and a forgery, in his possession, Mr. Green has conveyed, as the attorney of Santillan, to two different persons portions of the very land to which, according to his own affidavit, he was aware Santillan had not the slightest pretension. Under such circumstances, it is certainly not clearly the duty of the court to grant an application solely sustained by the oath of Mr. Green.

It is the uniform rule of courts of equity that the testimony on which a bill of review is allowed must be newly-discovered, and such as by reasonable diligence could not have been before procured. It is alleged in the petition that testimony was produced before the board of commissioners, on the part of the United States, in support of the allegation that the grant was simulated, and made subsequent to the time of the American occupation of the county. It could not have been unknown to the government that the two individuals best acquainted with the facts were Pio Pico, the alleged grantor, and Santillan, the alleged grantee. Neither was examined by the United States, from an apprehension, probably, that their testimony would not be favorable to the government. The United States are now informed that Santillan will testify to the facts alleged by them. It is at least doubtful whether such testimony can be deemed "newly-discovered," within the meaning of the rule. I am not aware of any case where a court of law has granted a new trial, or a court of equity has entertained a bill of review, where a person known to possess the fullest knowledge of all the facts in controversy, and who has not been examined, because it was supposed he would commit perjury, has, after the decision of the cause, been offered as a witness, because the party

calling him is advised that he might originally have been, or may now be, trusted on the stand.

Again: It is stated, in the petition, "that the material issue of fact in this case is whether the signature of Gov. Pio Pico to the grant is genuine, and, if genuine, whether he signed it at the time it purports to have been made." It is apparent that the evidence of Santillan and the other unnamed witness is to facts originally in issue, and cumulative and corroborative of the witnesses already examined by the United States. It is unnecessary to review or cite the cases upon the point thus presented. A reference to a recent decision of the supreme court will be sufficient; for the law, as declared by that court, is the rule of decision in this. In Southard v. Russell 16 How. [57 U. S.] 547, which was an appeal from a decree on a bill of review, the supreme court, in speaking of the newly-discovered evidence offered in that case, say: "Without expressing any opinion as to the influence this fact, if produced on the original hearing, might have had, it is sufficient to say that it does not come within any rule of chancery proceedings, as laying a foundation for, much less as evidence in support of, a bill of review. The rule, as laid down by Mr. Chancellor Kent, is, that newly-discovered evidence, which goes to impeach the character of witnesses examined in the original suit, or the discovery of cumulative witnesses to a litigated fact, is not sufficient. It must be different, and of a very decided and controlling character. The soundness of this rule is too apparent to require argument, for, if otherwise, there would scarcely be an end to litigation in chancery cases, and a temptation would be held out to tamper with witnesses, for the purpose of supplying defects of proof in the original cause." [Southard v. Russell] 16 How. [57 U. S.] 570. A bill of review may, however, be permitted, where the new evidence is in writing, or matter of record. In this case it is alleged, in the petition and affidavit of Mr. Green, that Santillan delivered to him (Green) papers which he (Santillan) informed him were part of the records of the court of first instance of this district, which papers show that Santillan, at the time of the pendency of certain suits in the court of first instance, claimed and testified that his right to the land alleged to have been granted to him was merely by virtue of his office as curate of the mission. But this documentary proof has not been exhibited to the court. Whether or not the effect of the proof is such as is attributed to it, the court is wholly unable to determine. The authorities are clear and uniform that the court, before allowing a bill of review to be filed, should be satisfied that the new evidence offered is of a "very decided and controlling character," and such as, if unanswered, would cause the original decree to be reversed, or would present a case for judicial doubt and decision.

It is unnecessary to pursue this inquiry fur-

ther. I desire to be understood as resting my decision of this motion on the ground that this court has no jurisdiction to entertain a bill filed to review its decrees in land cases, and as declining to pass upon the merits of this application. If I should be in error as to the question of jurisdiction, the supreme court will probably compel, by mandamus, this court to entertain and pass upon the merits of this or any future application for leave to file a bill of review in land cases. I have examined the questions presented in this case at perhaps unnecessary length. I have thought fit, however, in view of their great importance, to state fully the reasons upon which the decision is founded.

[Upon an appeal, by the United States, to the supreme court, the above decision was reversed, and the cause remanded to the district court, directing a dismissal of the claim. 23 How. (64 U. S.) 341.]